**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| WANDA MCCUE,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., and FORD MOTOR CREDIT COMPANY, LLC,<br><br>Defendants. | Case No. 1:26-cv-00045<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Wanda McCue ("McCue") sued multiple defendants, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*. Before the Court now is Defendant Ford Motor Credit Company, LLC's ("Ford") motion to dismiss. [29]. For the reasons stated herein, Ford's motion to dismiss [29] is denied.

## I. Background

The following factual allegations taken from the operative complaint [1] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

In June 2018, McCue opened a credit account with Ford to finance a vehicle purchase. [1] ¶ 50. In July 2022, McCue filed for Chapter 13 bankruptcy, and her bankruptcy plan was approved the following September. *Id*. ¶¶ 51–52. McCue's credit account with Ford remained open during her bankruptcy, and she continued to make regular, timely payments to Ford throughout her bankruptcy proceedings. *Id.* ¶¶ 53–

54, 57. McCue's bankruptcy was discharged on January 31, 2025. *Id.* ¶ 55. On March 31, 2025, the bankruptcy trustee for McCue's case filed a final accounting report, which showed that no disbursements were made to Ford through the bankruptcy. *Id.* ¶¶ 56–57.

In June 2025, McCue requested credit reports from two credit reporting agencies ("CRAs")[1]: Equifax Information Services, LLC ("Equifax") and Experian Information Solutions, Inc. ("Experian"). *Id.* ¶¶ 58–59. After receiving the reports, she discovered that her Ford account was being reported by Equifax and Experian with a "bankruptcy status." *Id.* In October 2025, McCue sent letters to Equifax and Experian to dispute this inaccurate information. *Id.* ¶ 60. In her dispute letters, McCue contended that "the [Ford] [a]ccount was not included in her bankruptcy repayment plan, that Ford had never received any payments through the bankruptcy, and that she had made all of her payments on time." *Id.* ¶ 61. McCue alleges that, in response to her dispute letters, Experian and Equifax sent Ford an automated credit dispute verification ("ACDV"), but Ford failed to conduct a reasonable investigation upon receiving the ACDVs. *Id.* ¶¶ 68, 73, 89, 92.

Later that month, Experian completed a dispute investigation and verified the Ford account information as accurate, reporting it as "discharged through Chapter 13 bankruptcy." *Id.* ¶ 63. McCue received no response from Equifax, and Equifax did not update her credit report to reflect McCue's dispute. *Id.* ¶ 64.

---

[1]McCue also requested a credit report from TransUnion, which is not a party to this suit.

In November 2025, McCue again obtained copies of her credit reports from Equifax and Experian. *Id.* ¶ 65. As before, Equifax and Experian continued to report the Ford account with a "discharged in bankruptcy" status, when in fact it had been timely paid. *Id.* ¶ 66.

## II. Standard of Review

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Additionally, where a defendant, as here, asserts a facial challenge to subject matter jurisdiction and moves to dismiss for lack of standing pursuant to Rule 12(b)(1), the Court applies *Twombly-Iqbal*'s "'plausibility' requirement." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). In assessing whether a plaintiff has established standing, the Court accepts as true "all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 381–82 (7th Cir. 2020).

**III. Analysis**

McCue brings one count against Ford under 15 U.S.C. § 1681s-2(b), claiming that Ford failed to conduct a reasonable investigation with respect to the Ford account information disputed by Plaintiff following receipt of the ACDVs from Experian and Equifax. [1] ¶¶ 88–89, 92, 95, 126–31. Ford moves to dismiss, arguing that McCue (1) lacks Article III standing; (2) fails to plead a violation of the FCRA; (3) was required to submit an additional dispute after the dispute here; and (4) fails to allege that Ford acted negligently or willfully. The Court addresses each argument in turn.

**A. McCue Has Article III Standing**

Ford first argues that McCue fails to plausibly allege an injury sufficient to establish Article III standing. [29] at 4. Specifically, Ford asserts that because McCue "does not allege that any lender denied her credit, that she paid higher interest rates, or that she suffered any quantifiable financial loss" due to Ford's alleged conduct, her injury is not "concrete." *Id*. at 5.

Under Article III, a federal court may only resolve "a real controversy with real impact on real persons." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (citation omitted). Establishing Article III standing requires a plaintiff to show that (1) the injury she suffered is in fact concrete, particularized, and actual or imminent; (2) that it likely was caused by the defendant; and (3) that it could be redressed by judicial relief. *Id*. at 423 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Ford's standing argument relies heavily on the Supreme Court's decision in *Ramirez*, so the Court begins there.

In *Ramirez*, the Supreme Court considered whether a class of FCRA plaintiffs had a concrete injury sufficient to confer Article III standing. 594 U.S. 413. The Supreme Court explained that "an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id*. at 426–27. Traditional tangible harms, such as physical harms and monetary harms, "readily qualify as concrete injuries under Article III." *Id*. at 425. Intangible harms, on the other hand, "can … be concrete," particularly if they bear a "close relationship to harms traditionally recognized as providing a basis for lawsuits

in American courts," such as reputational harms, disclosure of private information, and intrusion upon seclusion. *Id.* (collecting cases). Applying this rationale, the Supreme Court found that the plaintiffs had standing to bring an FCRA claim against a CRA where (1) the CRA had prepared credit reports containing misleading information about the plaintiffs and (2) those credit reports were disseminated to third parties. *Id.* at 432. The dissemination was key, and the Supreme Court reasoned that those plaintiffs suffered a concrete injury because their injury bore a resemblance to the reputational harm associated with the tort of defamation. *Id.*

*Ramirez* involved a suit against a CRA. Here, however, McCue alleges Ford—a furnisher—violated the FCRA. In *Ewing v. MED-1 Solutions, LLC*, the Seventh Circuit was confronted with circumstances similar to those before the Court now. 24 F.4th 1146 (7th Cir. 2022). Specifically, the Seventh Circuit considered whether a plaintiff suffered a concrete injury where a debt collector published false information to a CRA. *Id.* at 1152. Unlike *Ramirez* (and McCue here), *Ewing* involved a claim brought under the Fair Debt Collection Practices Act ("FDCPA"), rather than the FCRA. *Id.* Still, the Seventh Circuit performed the standing analysis that *Ramirez* instructed: it asked whether the plaintiffs had suffered an injury sufficiently analogous to one recognized at common law. *Id.* at 1151. And as in *Ramirez*, the *Ewing* court found the plaintiffs' injuries to be closely related to the harm caused by defamation and thus sufficient to confer Article III standing. *Id.* at 1153–1154.

The same follows here. McCue alleges that Ford disseminated inaccurate information to third parties Experian and Equifax, which in turn included that

information on McCue's credit files. This alleged harm is analogous to the concrete harm recognized by the tort of defamation. *Ramirez*, 594 U.S. at 432; *see also Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1192 (7th Cir. 2021) (applying *Ramirez* to a standing question for a similar FCRA claim under 15 U.S.C. § 1681b(f)).

Resisting this conclusion, Ford cites the Eastern District of Kentucky's decision in *Lutes v. Stock Yards Bank & Tr. Co.,* where the court granted summary judgment to a credit furnisher after finding the plaintiff lacked standing. No. CV 5:22-53-KKC, 2023 WL 1787155, at *4 (E.D. Ky. Feb. 6, 2023). The *Lutes* court found that, in response to the furnisher's motion for summary judgment, the plaintiff offered "barely more than speculation" that the injury flowed from the furnisher's conduct. *Id*. at *4. *Lutes* did not consider whether the plaintiff had suffered a concrete harm analogous to one recognized in common law, as *Ramirez* and *Ewing* instruct. Moreover, *Lutes* is non-binding and was decided at summary judgment rather than the pleadings stage. The Court thus does not find *Lutes* persuasive.

In short, because McCue has alleged that Ford disseminated false information to third-party CRAs, she has sufficiently alleged a concrete injury for purposes of Article III standing.

### B. McCue States a Claim Under 15 U.S.C. § 1681s-2(b)

Ford next argues that McCue fails to state a § 1681s-2(b) claim. [29] at 5–7. To state a claim for a violation of § 1681s-2(b), a plaintiff must plausibly allege that (1) a furnisher of credit information provided incomplete or inaccurate information, and (2) the incompleteness or inaccuracy was the product of an unreasonable

investigation. *Frazier v. Dovenmuehle Mortg., Inc.*, 72 F.4th 769, 775 (7th Cir. 2023). Ford challenges both prongs.

**a. McCue Plausibly Alleges that Ford Provided Inaccurate Information**

Ford first argues that McCue cannot satisfy prong one because she listed Ford as a creditor in her bankruptcy proceedings, and so the information Ford provided to Equifax and Experian was neither incomplete nor inaccurate. [29] at 5–7. In support, Ford attaches to its motion various excerpts from McCue's proceedings which list Ford as a creditor. [29-1]; [29-2]. This argument is a non sequitur. Whether Ford was McCue's creditor is not in dispute. McCue instead alleges that Ford inaccurately reported that her account with Ford was *discharged* in bankruptcy. [1] ¶¶ 63, 66, 96, 98–99. Though Ford argues that it "reasonably relied on bankruptcy schedules, court records, and credit reporting," [29] at 7, Ford identifies nothing indicating that McCue's Ford account was discharged in her Chapter 13 proceedings. And while Ford contends that it never reported to any CRA that the Ford account was discharged, that is a factual dispute that cannot be resolved at this point in the case. At the pleadings stage, the Court must accept McCue's well-pleaded allegations as true. *Lax*, 20 F.4th at 1181.

Ford also claims it is not obligated to determine the "legal validity" of McCue's debt with respect to her bankruptcy. [29] at 6–7 (citing *Denan v. Trans Union LLC,* 959 F.3d 290 (7th Cir. 2020) and *Chaitoff v. Experian Information Solutions, Inc.*, 79 F.4th 800 (7th Cir. 2023)). But McCue does not challenge the legal validity of her debt—she alleges a factual inaccuracy in Ford's reporting. A legal dispute "involve[s]

the application of law to facts[.]" *Chaitoff*, 79 F.4th at 808. No legal analysis was required if Ford incorrectly reported that the Ford account was "discharged" rather than merely "included" in the bankruptcy.

Moreover, even assuming that this is a legal, rather than a factual dispute, Ford stretches the law. In both cases Ford relies on— *Chaitoff* and *Denan*—the plaintiffs brought claims against CRAs. 79 F.4th at 809; 959 F.3d at 292. The Seventh Circuit explained in *Chaitoff* "that *CRAs* are not well suited to adjudicate legal defenses to a debt[.]" 79 F.4th at 814 (emphasis added). But the Seventh Circuit noted in *Denan* that furnishers—like Ford—"are tasked with accurately reporting liability" because "they are in a better position to determine the legal validity of a debt." 959 F.3d at 295 (citing *Brill v. TransUnion LLC*, 838 F.3d 919, 921 (7th Cir. 2016)).

**b. McCue Plausibly Alleges that Ford's Investigation Was Unreasonable**

Ford also argues that McCue cannot satisfy prong two because she has not sufficiently alleged that Ford conducted an unreasonable investigation. [29] at 7–8. Under § 1681s-2(b), when a CRA notifies a furnisher of a dispute through an ACDV, the furnisher must conduct an investigation with respect to the disputed information. *Walton v. EOS CCA*, 885 F.3d 1024, 1028 (7th Cir. 2018); *Woods v. LVNV Funding, LLC*, 27 F.4th 544, 550 (7th Cir. 2022). A furnisher is only liable under § 1681s-2(b) if its investigation is unreasonable. *Walton*, 885 F.3d at 1028.

McCue sufficiently alleges an unreasonable investigation. She alleges that her Ford account was not discharged in bankruptcy, and that she was making regular payments on it. [1] ¶ 11. She further alleges that she disputed the bankruptcy status

of her Ford account with Equifax and Experian and that Equifax and Experian thereafter sent an ACDV to Ford pursuant to her dispute. *Id.* ¶¶ 59, 61, 68, 73. Drawing all inferences in McCue's favor, it is plausible that Ford's investigation into the dispute—which allegedly failed to correct the information that McCue complained about—was unreasonable. *Id.* ¶¶ 63, 94.

Ford nevertheless claims that *Westra v. Credit Control of Pinellas* stands for the proposition that an investigation based on official bankruptcy information, which Ford contends is what happened here, is reasonable as a matter of law. 409 F.3d 825 (7th Cir. 2005); [29] at 8. Nothing in *Westra* suggests this. *Westra* does not discuss a bankruptcy filing; it concerned a dispute over an account created due to identity theft. 409 F.3d at 826. Further, it was decided on summary judgment, and the court had before it records from the dispute process which allowed it to assess the sufficiency of the furnisher's investigation. *Id.* at 827. Moreover, *Westra* observes, "[w]hether a defendant's investigation is reasonable is a factual question normally reserved for trial[.]" *Id.* (citing *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001)). The same principle applies at this stage in the proceedings.

### C. McCue is Not Required to Submit Additional Disputes Under 15 U.S.C. § 1681s-2(b)

Ford additionally contends that the FCRA requires McCue to send multiple disputes for Ford to be liable under § 1681s-2(b). [29] at 9. Ford relies on the Seventh Circuit's decision in *Frazier* for this proposition. 72 F.4th at 769. Nothing, however, in *Frazier* supports Ford's claim.

In *Frazier*, the Seventh Circuit affirmed summary judgment for a furnisher because the defendant's response to the ACDV did not include any patently incorrect information as a matter of law. *Id.* at 777. The Seventh Circuit said nothing suggesting that a plaintiff is required to submit some number of disputes either to a furnisher or a CRA to state a claim against a furnisher. And nothing in the text of the FCRA or this circuit's case law suggests that McCue was required to submit multiple disputes. *See* 15 U.S.C. § 1681s-2(b) ("After receiving notice pursuant to section 1681i(a)(2) of this title of *a* dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency …") (emphasis added); *see also Woods*, 27 F.4th at 550 (defendant's "receipt of the ACDV triggered a statutory obligation" to investigate after plaintiff's single formal dispute with a CRA, although he had previously extensively disputed with furnisher directly).

**D. McCue Plausibly Alleges that Ford Acted Negligently or Willfully**

Lastly, Ford claims that McCue fails to sufficiently allege that Ford negligently or willfully violated the FCRA. [29] at 9–10. A negligent violation of the FCRA requires a "causal relation" between the statutory violation and the harm suffered by the plaintiff. *Persinger*, 20 F.4th at 1194. By contrast, a willful violation of the FCRA is one committed knowingly or with "reckless disregard" of one's statutory duties. *Chaitoff*, 79 F.4th at 819.

As discussed, McCue adequately alleges a reputational injury based on Ford's dissemination of false information about her Ford account to a third party. This is sufficient to allege that Ford acted negligently. And based on McCue's allegations that Ford timely received McCue's payments, [1] ¶ 57, it is at least plausible that

Ford knew that McCue's Ford account was not discharged in her Chapter 13 bankruptcy and yet recklessly disregarded that fact during its review.

## IV. Conclusion

For the stated reasons, Ford's motion to dismiss [29] is denied.

E N T E R:

Dated: August 12, 2026

Mary M Rowland

MARY M. ROWLAND
United States District Judge